UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARTELL HOTELS, a California Limited Partnership, dba HALF MOON MARINA,<br><br>Plaintiff,<br><br>v.<br><br>S/L TALUS, that Certain 1981 Islander Sailing Vessel of Approximately 40-Feet in Length, Official No. 1202535, and all her engines, tackle, accessories, equipment, furnishings and appurtenances, in rem,<br><br>Defendant. | Case No.: 19cv1773-GPC(AGS)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR INTERLOCUTORY VESSEL SALE AND AUTHORIZING CREDIT BID**<br><br>**[Dkt. No. 18.]** |

Before the Court is Plaintiff's motion for interlocutory vessel sale and authorizing credit bid. (Dkt. No. 18.) No opposition has been filed. Based on the reasoning below, the Court GRANTS Plaintiff's motion.

**Procedural Background**

On September 16, 2019, Plaintiff filed a Verified Complaint against Defendant S/V Talus, that Certain 1981 Islander Sailing Vessel of Approximately 40-Feet in Length, Official No. 1202535, ("Vessel") and all of her engines, tackle, accessories, equipment,

furnishings and appurtenances, *in rem* for vessel arrest, interlocutory sale and for money damages for breach of contract for necessaries, trespass and *quantum meruit*. (Dkt. No. 1, Compl.) On October 8, 2019, the Court issued an order authorizing the arrest of the Vessel and appointing Plaintiff as Substitute Custodian of the Vessel. (Dkt. Nos. 4, 5.) The default of Defendant Vessel was entered on January 31, 2020. (Dkt. No. 14.) On March 17, 2020, the Court granted Plaintiff's *ex parte* motion for order authorizing release of personal property aboard Defendant Vessel. (Dkt. No. 20.)

On February 12, 2020, Plaintiff filed the instant motion for interlocutory vessel sale and authorization to credit bid. (Dkt. No. 18.) No opposition has been filed.

**Factual Background**

Plaintiff Bartell Hotels, a California limited partnership, dba Half Moon Marina ("Plaintiff") maintains a leasehold interest in a 180-slip marina known as "Half Moon Marina" located at 2303 Shelter Island Drive, San Diego, California. (Dkt. No. 1, Compl. ¶ 2.) Defendant is a 40-foot 1981 Islander sailboat which is documented by the United States Coast Guard under Official No. 1202535. (*Id.* ¶ 3.) The Vessel is believed to be owned by Mr. Ronald Lee. (*Id.* ¶ 5.) Around, April 2, 2016, Ronald Lee executed a Contract for Private Wharfage ("Wharfage Contract") where Plaintiff provided wharfage and other maritime services for the benefit of the Vessel. (*Id.* ¶ 7; *id.*, Ex. A.) Vessel has been arrears on several occasions since the contract was executed. (*Id.* ¶ 8.) Mr. Lee last tendered wharfage fees in June 2018. (*Id.* ¶ 9.) Paragraph 9 of the Wharfage Contract provides that either party may terminate it by tendering written notice of termination at least 30 days prior to the termination date. (*Id.* ¶ 10.) On November 13, 2018, Plaintiff sent Mr. Lee a letter notifying him of the termination of the Wharfage Contract and made effective 34 days later on December 16, 2018. (*Id.* ¶ 11.) Paragraph 9 of the Wharfage Contract provides that if a vessel remains at Plaintiff's marina after termination of the Wharfage Contract the vessel "shall be regarded as a trespasser and wharfage fees will, without waiving objections to the Vessel's trespass, be charged based on the then current transient rate." (*Id.* ¶ 12.) Despite the termination of the Wharfage

Contract, the Vessel has not vacated the marina and she remains there without contractual or other authority. (*Id.* ¶ 13.) The Vessel, by and through her owners, has failed and refused, and continues to fail and refuse to pay the amount contractually due and is in active breach of the Wharfage Contract. (*Id.* ¶ 15.) As of August 31, 2019, wharfage fees attributable to the Vessel are not less than $24,724.70. (*Id.* ¶ 16.) Per Paragraph 9 of the Wharfage Contract, wharfage fees are continuing to accrue at the marina's standard transient rate of $2.50 per foot of vessel length per day, which is $100.00 per day for the 40-foot Vessel. (*Id.* ¶ 17.)

Ronald Lee, who signed the Wharfage Contract and who has represented that he is a trustee for the owner of the Vessel, is currently incarcerated in Arizona and subject to a five-year custodial term as of August 9, 2019 for "theft." (Dkt. No. 18-5, Weiss Decl. ¶ 2; *id.*, Ex. A.)

## Discussion

Federal courts exercise admiralty jurisdiction under the Constitution and statute. U.S. Const. art. III, § 2, cl. 1; 28 U.S.C. § 1333(1). A "contract for wharfage is a maritime contract", *Ex Parte Easton*, 95 U.S. 68, 75 (1877), and within the Court's admiralty jurisdiction under 28 U.S.C. § 1331 "if wharfage is provided to a specific vessel." *Royal Ins. Co. of America v. Pier 39 Ltd. P'ship*, 738 F.2d 1035, 1037 (9th Cir. 1984) (citing *Ex Parte Easton*, 95 U.S. 68 (1877)). A maritime lien on the vessel is established in favor of those who provide necessaries for the benefit of a vessel. 46 U.S.C. § 31342(a) ("a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner - (1) has a maritime lien on the vessel; and (2) may bring a civil action in rem to enforce the lien"). In this case, Plaintiff has filed the instant action, *in rem*, seeking foreclosure on its maritime lien arising under the Wharfage Contract through the interlocutory sale of the Vessel.

**A.    Interlocutory Sale of Vessel**

"The interlocutory sale of a vessel is not a deprivation of property but rather a necessary substitution of the proceeds of the sale, with all of the constitutional safeguards

3

necessitated by the *in rem* process." *Ferrous Fin. Servs. Co. v. O/S Arctic Producer*, 567 F. Supp. 400, 401 (W.D. Wash. 1983).

Rule (E)(9)(a)[1] of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Claims ("Supplemental Admiralty Rules"), amended 2016, governs interlocutory vessel sales and provides,

> (i) On application of a party, the marshal, or other person having custody of the property, the court may order all or part of the property sold—with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court—if:
>
> (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
>
> (B) the expense of keeping the property is excessive or disproportionate; or
>
> (C) there is an unreasonable delay in securing release of the property.

Fed. R. Civ. P., Suppl. Adm. R. E(9)(a)(i). "To justify an interlocutory sale, Plaintiff need only establish the existence of one of the three provisions listed in Rule E(9)(a)(i)." *Rainaldi Family Trust Dated February 26, 2004 v. M/Y Excalibur, U.S.C.G. Official No. 1057893*, Case No. SACV 19-00684 AG (JDEx), 2019 WL 6794218, at *2 (C.D. Cal. Aug. 6, 2019) (citation omitted); *Merchants Nat'l Bank of Mobile v. Dredge Gen. G.L. Gillespie*, 663 F.2d 1338, 1341 (5th Cir. 1981) ("In order to prevail, the lienors need only show one of the three criteria.").

Plaintiff argues that all three conditions have been met. First, Plaintiff asserts that the Vessel is deteriorating in condition and value as she sits idle while under arrest. It explains that the Vessel's maintenance is of necessity limited because it focuses on preservation from an accident. Plaintiff presents the declaration of Ray Jones, President of Long Beach Yacht Sales, Inc., who is an experienced boater and has sold many

---

[1] In its motion, Plaintiff is referencing the former Rule (E)(9)(b) of the Federal Rule of Civil Procedure, Supplemental Rules for Certain Admiralty and Maritime Claims. (Dkt. No. 18-2 at 11.)

4

19cv1773-GPC(AGS)

thousands of vessels over the years and served as an expert in many cases on vessel condition and valuation matters. (Dkt. No. 18-3, Jones Decl. ¶ 1.) Jones opines that it is commonly understood among experienced vessel owners and yacht brokers that even well and regularly maintained vessels inevitably deteriorate in condition and value over time. (*Id.* ¶ 2.) The deterioration is worsened when vessels sit idle for extended periods in salt water environment. (*Id.*) While Jones has not personally inspected the Vessel, he has carefully examined dozens of photographs of the Vessel and concludes that if the Vessel is allowed to lay idle without routine maintenance and "without proper lay-up preparations," the engines might rust and freeze up. (*Id.* ¶ 3.) The Vessel will deteriorate in condition and value as she sits idle in salt water and the longer it remains under arrest, the greater the deterioration. (*Id.*) Based on a review of the "comps", he believes the fair market value of the Vessel at a public U.S. Marshal auction would not exceed $25,000. (*Id.* ¶ 4; id., Ex. A.)

District courts have ruled differently on whether the plaintiff's reliance on generalized assertions that a vessel will inevitably deteriorate over time without specific findings satisfies Supplemental Admiralty Rule E(9)(a)(i)(A). *Compare California Yacht Marina—Chula Vista, LLC v. S/V Opily*, No. 14cv1215-BAS(BGS), 2015 WL 1197540, at *3 (S.D. Cal. Mar. 16, 2015) (finding vessel is liable to deterioration if it remains arrested even though Court was not presented with any evidence of specific evidence concerning the Vessel) *with AmericanWest Bank v. P/V Indian*, No. 12cv1786 AJB(BGS), 2013 WL 7847565, at *2 (S.D. Cal. Mar. 1, 2013) (sale not warranted under Rule E(9)(a)(i)(A) because no specific evidence suggesting deterioration, decay or injury that is out of the ordinary for a vessel generally); *Vineyard Bank v. M/Y Elizabeth I*, No. 08cv2044 BTM(WMC), 2009 WL 799304, at *2 (Mar. 23, 2009) (declining to justify sale under Rule E(9)(a)(i)(A) because "[o]ther than a generalized assertion that idle vessels will deteriorate, Plaintiff offers no other evidence that the Defendant Vessel is liable to decay."). In *Sausalito Yacht Harbor v. S/V Soggy*, Case No. 19cv1268-TSH, 2019 WL 5091171, at *2 (N.D. Cal. July 5, 2019), the court also relied on a similar

5

declaration from Jones concerning deterioration and concluded "[i]t is both common sense and supported by Mr. Jones's declaration that the vessel is likely to deteriorate in condition as it remains arrested without maintenance, which is likely to impact the vessel's val[u]e." *Id.* Furthermore, as this Court stated in a prior case based on a similar analysis by Jones, it has no reason to doubt the veracity of Jones' expert opinion in this case; therefore, the Court concludes that Plaintiff has shown the deterioration criteria under Supplemental Admiralty Rule E(9)(a)(i)(A). *See Shelter Cover Marine, Ltd. v. M/Y Isabella*, Case No. 17cv1578-GPC-BLM, 2017 WL 5906673, at *2 (S.D. Cal. Nov. 30, 2017) (finding deterioration to Vessel if it remains arrested based on Jones' analysis).

Next, Plaintiff argues that the cost of keeping the Vessel in custody is excessive and disproportionate where no payments are being made to creditors, the Vessel is idle and the costs of custody are accruing. In this case, the custodial expenses are accruing at no less than $3,800 per month or $126.66 per day based on the Order Approving Substitute Custodian, (Dkt. No. 5). "Maintenance expenses of several thousand dollars per month, particularly where Defendant has made no attempt to answer Plaintiff's Complaint or secure the Vessel's release, are excessive and disproportionate." *Vineyard Bank*, 2009 WL 799304, at *2 ($4,500 a month is excessive and disproportionate); *Caterpillar Fin. Services Corp. v. Coleman*, 99–03821 CM RZX, 1999 WL 33218595, at *2 (C.D. Cal. Aug. 19, 1999) (finding that the "expense of keeping the [Defendant Vessel] in custody, specifically $1,400.00 per month, . . . appears to be excessive"). Thus, the Court concludes that Plaintiff has shown that the "expense of keeping the property is excessive or disproportionate."

Finally, Plaintiff contends that no security has been posted, and no offer has been made to post security for almost six months since the Vessel's arrest. "As a general rule, defendants are given at least four months to bond a vessel absent some other considerations." *Vineyard Bank*, 2009 WL 799304, at *2 (quoting *Bank of Rio Vista v. Vessel Captain Pete,* No. C 04–2736CW, 2004 WL 2330704, at *2 (N.D. Cal. Oct. 14, 2004)); *see also California Yacht Marina—Chula Vista*, 2015 WL 1197540, at *4 (nine

month delay was unreasonable); *Ferrous Fin. Servs. Co.*, 567 F. Supp. at 401 (no attempt to secure release of vessel within four months since arrest was unreasonable delay); *Merchants Nat'l Bank of Mobile*, 663 F.2d at 1341-42 (failure to secure the release of the vessel eight months after arrest constitutes unreasonable delay).

Here, the Vessel was arrested on October 18, 2019, nearly six months ago. (Dkt. No. 8.) Default has been entered and no person claiming interest in the vessel has come forward to secure the Vessel's release. Therefore, there has been an unreasonable delay in securing the release of the Vessel.

Because Plaintiff has demonstrated that all three factors of Rule (E)(9)(a) have been met, the Court GRANTS Plaintiff's motion for interlocutory vessel sale.

**B.     Authorization to Credit Bid**

Plaintiff also asks the Court to authorize it to credit bid at the auction because no party has asserted any maritime lien against the Vessel and as a result, it is the senior lienholder. Under the Local Rules for Admiralty and Maritime Claims,

> When the court determines on the merits that a plaintiff or plaintiff in intervention has a valid claim senior in priority to all other parties, that plaintiff in intervention foreclosing a properly recorded and endorsed preferred mortgage on, or other valid security interest in the vessel may bid, without payment of cash, certified check or cashier's check, up to the total amount of the secured indebtedness as established by affidavit filed and served on all other parties no later than seven (7) days prior to the date of sale.

Civ. L. Rule E.1(e)(2). In this case, no party has asserted any maritime lien claim against the Vessel and Plaintiff is the only maritime lien claimant. Plaintiff requests the Court to authorize a credit bid at the auction up to the lien amount attested to under oath in the Verified Complaint ($24,724.70) and which will be established by affidavit pursuant to Local Admiralty Rule E.1(e)(2), plus its actual and demonstrable costs of suit, including U.S. Marshal, substitute custodian and other custodia legis expenses, to be calculated through the date of the vessel sale at the rates provided by this Court's Order Appointing Substitute Custodian. (Dkt. No. 5.) The Court finds it is

appropriate to GRANT Plaintiff's request to credit bid at the auction of Defendant Vessel.

**Conclusion**

Accordingly, considering the Motion of Plaintiff Bartell Hotels, dba Half Moon Marina for an Order directing the public auction of the Defendant VESSEL in this action, S/V TALUS, Official No. 1202535, the Points and Authorities and the Declaration of Ray Jones in support thereof and the file of record in this action, and having concluded that the interlocutory sale of the Defendant VESSEL is warranted pursuant to Supplemental Admiralty Rule E(9)(a)(i) because she is subject to deterioration while in custody, because the expense of keeping her is excessive or disproportionate, and because there has been an unreasonable delay in securing her release, and good cause therefor appearing,

IT IS HEREBY ORDERED that, consistent with Supplemental Admiralty Rule E(9)(a) and Local Admiralty Rule E.1(e) the United States Marshal be and hereby is directed and empowered to sell said Defendant Vessel and her engines, tackle, accessories, equipment, furnishings and appurtenances, as is, where is, at public sale at the first available time and date, after having first caused notice of said sale to be published daily in a newspaper of general circulation within the City of San Diego, California for at least seven days immediately before the date of sale; and

IT IS FURTHER ORDERED that such public notice specify the date, time and location for the sale of the Defendant VESSEL; and

IT IS FURTHER ORDERED that, consistent with Local Admiralty Rule E.1(e)(2), such public notice specify that the last and highest bidder at the sale will be required to deposit with the U.S. Marshal a certified check or a cashier's check in the amount of the full purchase price not to exceed $500, and otherwise $500 or ten percent (10%) of the bid, whichever is greater, and that the balance, if any, of the purchase price shall be paid by certified check or cashier's check before confirmation of the sale or within three days

of dismissal of any opposition which may have been filed, exclusive of Saturdays, Sundays and legal holidays; and

IT IS FURTHER ORDERED that any proceeds of said sale shall be held by the United States Marshal or deposited by the United States Marshal in the Registry of this Court, pending further Order of this Court; and

IT IS FURTHER ORDERED that Plaintiff, having a secured maritime lien interest in the Defendant VESSEL pursuant to the Commercial Instruments and Federal Maritime Lien Act (46 U.S.C. § 31301, *et seq.*) and being the only claimant in this action asserting a maritime claim against her, is authorized pursuant to Local Admiralty Rule E.1(e)(2) to credit bid at the auction of the Defendant VESSEL, without payment of cash, a sum equal to its secured interest in the Defendant VESSEL, consisting of the lien amount specified in Plaintiff's Verified Complaint ($24,724.70) plus its actual costs of suit through the date of the sale, including U.S. Marshal and other custodia legis expenses, with such costs and expenses to be calculated at the rates specified and authorized in the Order Appointing Substitute Custodian and Authorizing Movement of Defendant Vessel. However, as Plaintiff's maritime necessaries lien interest in the Defendant VESSEL does not, as a matter of law, include attorneys' fees, such fees are not to be included in any credit bid Plaintiff makes; and

IT IS FURTHER ORDERED, pursuant to Local Admiralty Rule E.1(e)(2), that if within three days of the auction date, exclusive of Saturdays, Sundays, and legal holidays, no written objection is filed, the sale shall stand confirmed as of course, without the necessity of any affirmative action thereon by a judge, except that no sale shall stand confirmed until the buyer has complied fully with the terms of the purchase.

The hearing set on April 17, 2020 shall be **vacated**.

IT IS SO ORDERED.

Dated: April 13, 2020

Hon. Gonzalo P. Curiel
United States District Judge